UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LAURA PICARD

VERSUS

STATE OF LOUISIANA, THROUGH
DEPARTMENT OF JUSTICE, OFFICE
OF ATTORNEY GENERAL

CIVIL ACTION

NO. 10-868-JJB

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment (Doc. 40) by the Defendant, the State of Louisiana, through Department of Justice, Office of Attorney General. The Motion is opposed (Docs. 44 and 47), and the Defendant filed a reply (Doc. 53). Jurisdiction exists pursuant to Title 28 of the United States Code, Sections 1331 and 1343. Oral argument is not necessary.

I.     Discovery Issue

As a preliminary matter, the Plaintiff argues the Defendant never provided initial disclosures, has not identified witnesses and exhibits, and should be subjected to evidentiary sanctions under Federal Rule of Civil Procedure 37(c). The Plaintiff argues any late-filed pleading identifying witnesses and exhibits would be prejudicial, as the Defendant failed to identify exhibits and witnesses in the pretrial order (Doc. 29), and she should not be required to expend additional resources responding to late-disclosed materials and engaging in discovery.

As the following summary judgment analysis shows, a ruling on this issue in favor of either party does not change the outcome of this Ruling, so the Court does not address the issue.

II.     Facts

The following facts are either undisputed or taken as true based on evidence submitted by the non-movant Plaintiff.  The Plaintiff, Laura Picard, is an attorney formerly employed as an Assistant Attorney General by the Louisiana Department of Justice, Office of the Attorney General, in its Alexandria office, beginning in August or September of 2004.  The office chief, James Calhoun, was the Plaintiff's supervisor. The Plaintiff had a caseload of sixty to seventy cases, and the essential functions of the Plaintiff's position were defending tort cases, filing pleadings, making decisions on tactics and strategy, implementing those decisions, and going to trial.

The Plaintiff was in a car accident in 2006, causing her serious injuries.  After this accident, the Plaintiff was diagnosed with Dercum's disease, which is characterized by multiple painful lipomas, fatty tissue deposits or tumors underneath the skin.  The Plaintiff had lipomas in various parts of her body, including in the back of her knees and her abdominal region.  Her condition caused her pain, and made it difficult to climb stairs and eat. The Alexandria office has two reserved parking spaces near the front door of the building, reserved for Calhoun and Attorney General James "Buddy" Caldwell, or his representative, Joe Fuller.  In late 2006, the Plaintiff obtained a temporary handicap parking permit, which expired in late 2007, and the Plaintiff did not renew it.  For some time during the Plaintiff's employment, she requested a disabled or reserved parking space.  Elevator outages occurred periodically at the building housing the Alexandria office.  Whenever the elevator was not working, Calhoun would give the Plaintiff the option of going to a coffee shop, the library, or home.

In April of 2009, the Plaintiff was pregnant. In September of 2009, the Plaintiff was involved in another car accident, and was hospitalized overnight for observation purposes. Her physician advised her to stay on bedrest for three days. On or about September 25, 2009, the Plaintiff requested verbally from James Calhoun that she be able to work from home. The Plaintiff also requested to work from home some days when the elevator was not working.

By this time, the Plaintiff had been the "first chair" lawyer for five to six years on the Byrd-Starr case, a high-profile case involving drunk driving, which was set for trial on October 27, 2009. Victoria Murry was assigned as "second chair" on the case. In early September of 2009, a telephone conference was held, involving representatives of the Defendant, discussing contracting out the handling of the Byrd-Starr case to an outside law firm. Calhoun told the Plaintiff that they wanted to contract the case out because the Plaintiff was pregnant and because they were worried about her pregnancy. Calhoun told the Plaintiff that the meeting was because they wanted to reassign the case because of the Plaintiff's pregnancy. The telephone conference included a discussion that they were worried that the Plaintiff was pregnant and that it would somehow interfere with the trial. At this time, the Plaintiff had not had any complications with her pregnancy. The Plaintiff was very vocal that she wanted to stay in the case and that she was prepared.

During the time which the Plaintiff was on bedrest, she was informed that she would not be working on the Byrd-Starr case anymore. The Plaintiff returned to work in October of 2009, but she then stayed on bedrest for the remainder of her pregnancy, delivering a baby on October 26, 2009. Around the time in which the baby was born, an

employee of the Alexandria office brought Family and Medical Leave Act ("FMLA") paperwork to the Plaintiff in the hospital, and she submitted a request for FMLA leave. After returning to work, the Plaintiff was informed she had to send a memo to get the FMLA leave, and she did so on January 4, 2010.  On January 8, 2010, the Plaintiff's employment was terminated.  The Defendant claims the termination was the result of the Alexandria office losing the Plaintiff's position, and because the Plaintiff made false representations to the presiding judge and opposing counsel in the Byrd-Starr case that the Attorney General had a personal interest in the case and would not settle.[1]  The Plaintiff denies this allegation.

The Plaintiff filed a Charge of Discrimination with the Louisiana Commission on Human Rights on June 19, 2010.  The charge states discrimination took place August 1, 2009 at the earliest and January 8, 2010 at the latest.  The charge alleges discrimination based on sex, retaliation, and disability.  The charge includes a section for particulars, which states in part: "[o]n September 4, 2006, I asked for and was denied a reasonable accommodation.  On January 8, 2010, I was discharged."  It continues:

> According to the company, I was discharged due to budget cuts.
>
> I believe I have been discriminated against because of my sex, pregnancy, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, in that, while I was out on FMLA comments were made about me missing work and being a 'burden' on the office.

The Plaintiff filed this lawsuit in state court on November 10, 2012, bringing claims of pregnancy discrimination under Title VII, denial of reasonable accommodation

---

[1] The Defendant does not support its false representation assertion by pointing to competent summary judgment evidence.

under the Americans with Disabilities Act ("ADA"), interference and retaliation under the FMLA, and intentional infliction of emotional distress under Louisiana law.[2]  The case was removed to this Court on December 30, 2010.  The Defendant now moves for summary judgment on all claims other than intentional infliction of emotional distress.

### III. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact."  Fed. Rule Civ. P. 56(a).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case.  *Id.*  The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case.  *Id.*  A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden.  *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996).  Similarly,

---

[2] The Plaintiff also at least attempted to bring a disability-based harassment claim; however, that claim has now been voluntarily withdrawn.  Doc. 47, at 5.

5

"[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

### IV.   Analysis

The Defendant argues the Plaintiff has failed to establish a prima facie case with respect to her claims of discriminatory acts in violation of Title VII, the Americans with Disabilities Act ("ADA"), and the FMLA.

#### A.  ADA Failure to Accommodate Claims

##### 1.  Disabled/Reserved Parking and Consistent Use of the Elevator

The Defendant argues the Plaintiff's claim involving disabled/reserved parking and consistent use of the elevator are time-barred. Under the ADA, administrative claims must be filed within 300 days of the actionable conduct. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e)(1). As the Plaintiff filed her Charge of Discrimination with the Louisiana Commission on Human Rights on June 19, 2010, she needs to show the actionable conduct occurred on or after August 23, 2009. The Plaintiff argues she requested a parking space and a working elevator "all throughout her employment including the period after August of 2009;" however, this argument is unsupported. Doc. 47, at 17. The Plaintiff points to no competent summary judgment evidence to show actionable conduct on or after August 23, 2009, so the Plaintiff's claims involving disabled/reserved parking and consistent use of the elevator are time-barred.

6

2. Working from Home

The parties agree the scope of an administrative charge is not solely the scope of the administrative charge itself, but the scope of the investigation which "can reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). The parties disagree over whether the Plaintiff's requests to work from home are within the scope of her charge. The Defendant argues the Plaintiff included no reference to her requests to work from home on her EEOC charge, and that it is not reasonable to expect an EEOC investigation to delve into a facially time-barred failure to accommodate claim, or to expect such an investigation to look beyond the facially time-barred claim in search of additional allegations of failure to accommodate. The Plaintiff responds the accommodations and requests for permission to work from home are so related to the allegations contained in the charge and are highly likely to grow out of an EEOC investigation. The Court agrees with the Defendant based on the Defendant's aforementioned arguments. The Plaintiff's requests to work from home are not within the scope of the charge, as the investigation into the charge could not have reasonably been expected to grow to include the requests.

B. FMLA Claims

1. Interference

Although the Plaintiff does not list an FMLA claim in her claims summary, she briefly addresses the claim in her opposition, so the Court will attend to it. Doc. 47, at 5, 29, 30. Among other things, "the [FMLA] protects employees from interference with their [FMLA] leave as well as against discrimination or retaliation for exercising their rights." *Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).

7

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any rights provided under the FMLA." *Id.* "Interference" is not defined in the FMLA, but Department of Labor regulations explain that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220.

The parties disagree as to whether the Plaintiff presents a prima facie case of interference. The Defendant argues the Plaintiff cannot make the requisite showing that she was denied benefits to which she was entitled under the FMLA. *See Duchesne v. Shaw Group Inc.,* 2008 U.S. Dist. WL 4544387, *4 (W.D. La. Sept. 10, 2008); *Anderson v. New Orleans Jazz & Heritage Festival and Found., Inc.*, 464 F. Supp. 2d 562, 567 (E.D. La. 2006). The Plaintiff argues whether the Defendant officially processed the Plaintiff's request for leave is a genuine issue of material fact. In support, she presents evidence that an employee of the Alexandria office brought FMLA paperwork to her in the hospital, and she cites a memorandum she composed stating she completed the leave paperwork and Mr. Calhoun's deposition testimony that he did not recall receiving notice that the Plaintiff's FMLA request was granted. This evidence, considered in the light most favorable to the Plaintiff, is not evidence of the Plaintiff's leave request being denied, interfered with, discouraged, or restrained. As such, the Plaintiff is unable to present a prima facie case of interference.

2. Retaliation

The Defendant first argues it is not clear whether the Plaintiff is advancing an FMLA retaliation claim, since there is no discernible FMLA retaliation claim in the

Plaintiff's EEOC Charge, discovery responses, or deposition testimony. The Defendant provides little explanation for its arguments and the Plaintiff does not respond to them. Regardless, the Court finds the Defendant's arguments unavailing. The Plaintiff states a claim for FMLA retaliation. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Furthermore, the Plaintiff's FMLA retaliation claim is within the scope of her EEOC charge. The investigation into the EEOC charge could have reasonably been expected to grow to include this claim, since the charge includes language about the Plaintiff's discharge and that, "while I was out on FMLA comments were made about me missing work and being a 'burden' on the office." Doc. 40-7, at 2; *Pacheco*, 448 F.3d at 789.

The mixed-motive burden-shifting framework applies to this claim.[3] Under this framework,

> (1) the employee must make a prima facie case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or . . . b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have

---

[3] The Defendant argues for application of the *McDonnell Douglas*/*Rachid* framework, which *Rachid* refers to as the "modified *McDonnell Douglas* approach." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). However, the Defendant mistakes what steps are included in the modified *McDonnell Douglas* approach. The Defendant states the third step in the modified *McDonnell Douglas* approach differs from the third step in the mixed-motive framework, when the approaches are actually one and the same, with the mixed-motive framework being at least partially derived from *Rachid*. *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333–35 (5th Cir. 2005); *Rachid*, 376 F.3d at 312. Although the Supreme Court's recent opinion in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 178–79 (2009), raises the question of whether the mixed-motive framework is available to plaintiffs alleging discrimination outside of the Title VII framework, the Fifth Circuit's post-*Gross* analysis of an FMLA retaliation claim using the mixed-motive framework leads the Court to believe it remains applicable here. *Crouch v. J C Penney Corp., Inc.*, 337 Fed. Appx. 399, 401–02, 402 n. 1 (5th Cir. 2009). Furthermore, considering that the modified *McDonnell Douglas* approach does not differ from the mixed-motive framework, the parties agree that the mixed-motive framework is to be applied.

> taken the same action despite the discriminatory animus. The employer's final burden is effectively that of proving an affirmative defense.

*Richardson*, 434 F.3d at 333; *see Crouch*, 337 Fed. Appx. at 401 (applying to FMLA retaliation claim).

The Defendant argues the Plaintiff cannot make the requisite prima facie showing for this claim. "To make a prima facie showing of retaliation under the FMLA, [the Plaintiff] must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5th Cir. 2001). The Defendant argues the Plaintiff has not shown she was treated less favorably than an employee who had not requested leave under the FMLA or that the adverse decision was made because she took FMLA leave.

The Plaintiff satisfies the third element by presenting evidence that the adverse decision was made because she took leave. Temporal proximity between an employer's knowledge of protected activity and an adverse employment action is sufficient evidence of causality to establish a prima facie case of retaliation if the temporal proximity is "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273–74 (2001); *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). In establishing this rule in *Clark County School District v. Breeden*, the Supreme Court referenced *O'Neal v. Ferguson Construction Company*, 237 F.3d 1248, 1253 (10th Cir. 2001), a Tenth Circuit decision which stated "a one and one-half month period between protected activity and adverse action may, by itself, establish causation."

*Breeden*, 532 U.S. at 274 (2001). Accordingly, the four day time period between the Plaintiff's sending a memo requesting FMLA leave and her termination is very close, and is sufficient to satisfy the causality requirement of the Plaintiff's prima facie case.

The Defendant's articulated legitimate, non-discriminatory reason for the adverse employment action, supported by evidence, is that the Alexandria office lost the Plaintiff's position and no longer has her position.[4] The burden then shifts to the Plaintiff to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or . . . b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. The Plaintiff creates a genuine issue of fact with regard to the pretext prong by presenting evidence that the Alexandria office, in mid 2012, had the same number of attorneys as before the Plaintiff's termination. The evidence presented by the Defendant fails to prove it would have taken the same action despite the discriminatory animus. Summary judgment is therefore inappropriate for this claim.

### C. Title VII Pregnancy/Gender Discrimination Claim

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As amended by the Pregnancy Discrimination Act, Title VII states "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy,

---

[4] The Defendant also presents as evidence an excerpt from the affidavit of Rob Harroun, stating he was advised by Attorney General Caldwell that the Plaintiff and several other employees were going to be laid off due to budgetary constraints. In light of the fact that the Defendant can articulate a legitimate, non-discriminatory reason for the adverse employment action without this evidence, and in light of the discovery issue involving this affidavit, the Court does not consider it in evaluating this factor.

childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . ." 42 U.S.C. § 2000e(k). "To establish a prima facie case of discrimination under Title VII, a plaintiff may prove her claim either through direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas* . . . ." *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802–03). "The *McDonnell Douglas* test requires the plaintiff to show: (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated." *Id.* The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* Once the employer articulates such a reason, "the scheme of shifting burdens and presumptions simply drops out of the picture, and the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved that the defendant intentionally discriminated against her because of her sex. *Id.*

The Defendant argues the reassignment of the Byrd-Starr case does not constitute an adverse employment action. To constitute an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "[R]eassignment of job duties is not automatically actionable." *Id.* at 70. "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular

12

case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.*

*Burlington Northern* found "the EEOC has consistently found 'retaliatory work assignments' to be a classic and 'widely recognized' example of 'forbidden retaliation.'" *Id.* at 70. It rejected the argument "that a reassignment of duties cannot constitute retaliatory discrimination where, as here, both the former and present duties fall within the same job description." *Id. Burlington Northern* held a schedule change in an employee's work schedule or a supervisor's refusal to invite an employee to lunch, in some situations, could be considered materially adverse. *Id.* at 69.

The Defendant cites a number of Eleventh Circuit cases as support for its argument that the reassignment of the Byrd-Starr case did not affect the Plaintiff's permanent job title or classification, her other duties or responsibilities, her pay status, and that she suffered no tangible harm. The Defendant further argues that out of the sixty or seventy cases typically composing the Plaintiff's caseload, the reassignment of a single case could hardly constitute an adverse employment action. The Plaintiff presents evidence that the Byrd-Starr case was a high-profile case, which she worked on as "first chair" for approximately five to six years.

Here, reassignment of the Byrd-Starr case could be considered materially adverse to a reasonable employee, judging from the perspective of a reasonable person in the Plaintiff's position, considering all the circumstances. In light of *Burlington Northern*'s guidance, the high-profile nature of the case, the Plaintiff's leadership position as "first chair,' and her time spent working on the case, the Plaintiff's removal from the case might have dissuaded a reasonable worker from making or supporting a

13

charge of discrimination. As such, the Court does not find that the Plaintiff's reassignment from the Byrd-Starr case does not constitute an adverse employment action as a matter of law.

The Defendant also argues the reassignment was not "because of" the Plaintiff's pregnancy. Specifically, the Defendant argues the testimony of Rob Harroun shows that the Attorney General himself ordered the reassignment of the case as a direct result of the Plaintiff's unprofessional and unethical actions in the Byrd-Starr case. Even if the Defendant pointed to competent summary judgment evidence to support this argument, which it does not, the Plaintiff creates a genuine issue of fact as to this issue. The Plaintiff does so by presenting evidence that James Calhoun told her they wanted to reassign the case because of her pregnancy, that they were worried that she was pregnant and that it would somehow interfere in the presenting of the trial, and that, at the time of at least of some of these comments, she had not had any issues with her pregnancy. Summary judgment on this claim is therefore denied.

V.   Conclusion

Accordingly, the State of Louisiana's Motion for Summary Judgment (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART**. Laura Picard's ADA claims, her disability-based harassment claim, and her FMLA interference claim are hereby dismissed.

Signed in Baton Rouge, Louisiana, on March 14, 2013.

  _____
  **JAMES J. BRADY, DISTRICT JUDGE**